IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AMBROSE S. FERNANDEZ, JR., | ) | CIVIL NO. 10-00573 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING (1) DEFENDANTS |
| | ) | SANJ SAPPAL AND SECURITAS'S |
| V. | ) | MOTION FOR SUMMARY JUDGMENT, |
| | ) | (2) DEFENDANTS CLAYTON FRANK |
| DIRECTOR CLAYTON FRANK; | ) | AND PAUL McINTIRE'S MOTION |
| INSPECTOR NINO; | ) | FOR SUMMARY JUDGMENT, AND (3) |
| STATE SHERIFF PAUL McINTYRE; | ) | DEFENDANT SATURINO GERVACIO'S |
| DEPARTMENT OF PUBLIC SAFETY; | ) | MOTION FOR SUMMARY JUDGMENT |
| SANJ SAPPEL; SECURITAS | ) | |
| SECURITY SERVICES USA, INC.; | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER GRANTING (1) DEFENDANTS SANJ SAPPAL AND SECURITAS'S
MOTION FOR SUMMARY JUDGMENT, (2) DEFENDANTS CLAYTON
FRANK AND PAUL McINTIRE'S MOTION FOR SUMMARY JUDGMENT, AND
(3) DEFENDANT SATURINO GERVACIO'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        On October 25, 2011, pro se Plaintiff Ambrose S.

Fernandez, Jr. ("Fernandez"), filed his Amended Complaint. Mot.

for Amended Compl., Oct. 25, 2011, ECF No. 57. The Amended

Complaint asserts claims under the "American with Disabilities

Act of 1990" and an unidentified "Repealed Accessibility Law."

Amended Compl. at 20, 23. Fernandez claims that he was

discriminated against at the Hawaii Supreme Court building by

security personnel because of his disability. His alleged

disability relates to the cardiac defibrillator implanted in his

chest. Fernandez also generally takes issue with the way in

which people with disabilities are accommodated at the Hawaii

Supreme Court building. The court construes the Amended Complaint as asserting violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

Defendants Clayton Frank, Director of the Department of Public Safety ("DPS");[1] Sheriff Paul McIntire (incorrectly named as "Paul MacIntyre"); Securitas Security Services USA, Inc. ("Securitas"); Sanj Sappal, the Area Vice President of Securitas (incorrectly named as "Sanj Sappel"); and Saturino Gervacio (named as "Inspector Nino") now seek summary judgment. Def. Director Clayton Frank, Department of Public Safety, and Paul McIntire's Mot. for Summ. J., Nov. 15, 2011, ECF. No. 63; Defendants Sanj Sappal and Securitas Security Services USA,

---

[1] The caption of the Amended Complaint appears to list DPS not as a named party but instead as part of the identification of Frank. That is, the caption appears to say that Director Frank of the DPS (followed in the caption by a street address) is sued, not that DPS itself is sued. However, the text of the Amended Complaint refers repeatedly to "the State." The court has before it a summary judgment motion brought by "State Defendants," who are defined somewhat ambiguously as "Defendants Director Clayton Frank, Department of Public Safety, and Paul McIntire." The memorandum in support of that motion does not analyze any of Fernandez's claims as being brought against DPS. The Answer to the Complaint, filed on November 4, 2010, ECF No. 7, and a Notice of Appearance filed by counsel on June 29, 2011, ECF No. 34, similarly refer to "Director Clayton Frank, Department of Public Safety, Paul McIntire." (When the name of a document as entered in the case docket differs from the title on the actual document, as with ECF No. 34, the court relies on the title of the actual document.) The court notes that Fernandez served the original Complaint on Frank and McIntire, but does not appear to have served DPS as a separate Defendant. ECF No. 9. The court therefore proceeds with the understanding that DPS is not itself a party to this action.

2

Inc.'s Mot. for Summ. J., Nov. 15, 2011, ECF No. 68; Defendant Saturino Gervacio aka Inspector Nino's Mot. for Summ. J., Dec. 21, 2011, ECF No. 85. The court grants the motions on multiple grounds.

II.     <u>LEGAL STANDARD.</u>

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)); <u>accord</u> <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." <u>Miller</u>, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would

entitle it to a directed verdict if the evidence were uncontroverted at trial.  Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party.  Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Id.  The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.  See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999).  On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

III.    BACKGROUND FACTS.

A.  Fernandez's Filings.

It is difficult to tell what facts give rise to Fernandez's claims and what conduct by Defendants Fernandez is complaining about.  Although Fernandez does submit affidavits,

4

they go to events relating to the service of documents, not to the underlying events. In an attempt to understand what Fernandez is claiming, the court is drawing on details from the Amended Complaint and the numerous other documents Fernandez has filed, even though, except for the affidavits, they do not present evidence in admissible form. See Fraser v. Goodale, 342 F.3d 1032, 1046 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." (citing Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."), and Fed. Deposit Ins. Corp. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment." (citations and quotation marks omitted))).

From what the court can discern, prior to August 25, 2010, Fernandez was parking at the Hawaii Supreme Court and actually entering the building to use the Hawaii Supreme Court library, which is open to the public. Amended Compl. ¶ 26. On August 25, 2010, Fernandez again went to the Hawaii Supreme Court to use the library. Although Fernandez's papers do not clearly

say so, the court surmises that Fernandez declined to walk though
the magnetometer at the entrance out of concern that it might
affect the defibrillator implanted in him.  Fernandez says he
told Gervacio, allegedly on duty as a security guard, not to
touch his upper body.  Fernandez apparently wanted to be searched
with a handheld wand, but, because Gervacio allegedly had no
wand, allowed Gervacio to pat him down from the waist down.  Mot.
to Deny Def. Saturino Gervacio aka Inspector Nino's Concise
Statement of Deny Facts in Support of Mot. for Summ. J. Filed
December 19, 2011, at 4, Jan. 13, 2012, ECF No. 95-1.  From the
period after August 25, 2010, until September 2, 2010, Fernandez
allegedly entered the Hawaii Supreme Court building through the
main entrance.  Amended Compl. ¶ 39.  He further alleges that
"Security System Inspectors (Filipinos)" and the Department of
Public Safety Officer on duty improperly touched him, and that
they did not have a metal-detecting wand to use to inspect
someone who, like him, had a defibrillator.  Id. ¶¶ 39-40.  He
alleges that he was retaliated against and threatened by
Defendant McIntire in an undescribed manner.  Id. ¶ 45.

Fernandez appears to further allege that Securitas,
the Department of Public Safety, and an inspector (presumably
Gervacio) lack training, and improperly continue to "pat down"
individuals who come to the Hawaii Supreme Court building and
engage in a pattern of oppression, malicious misrepresentation,

6

and misconduct.  Id. ¶ 42.

Fernandez also points to various alleged deficiencies at the Hawaii Supreme Court building that, according to Fernandez, the State of Hawaii must correct to bring the building into compliance with Title II of the Americans with Disabilities Act.  Amended Compl. ¶ 27.  For example, Fernandez states, "The curb ramp at front of the Supreme Court building contains an abrupt change in level greater than 1/4 inch."  Id. ¶ 31.  He suggests that the curb ramp be altered "so that it does not contain [an] abrupt change in level greater than 1/4 inch."  Id. The Amended Complaint is accompanied by various exhibits that range from the text of statutes, regulations, and ordinances, to diagrams of proper "maneuvering clearances at doors," and photos and diagrams of the Hawaii Supreme Court building.  See ECF Nos. 57-1 to 57-14.[2]

B.  Defendants' Version.

According to Defendants, on August 25, 2010, Fernandez attempted to enter the Hawaii Supreme Court building.  See Decl. of Saturino Gervacio ¶¶ 2-3, Dec. 21, 2011, ECF No. 85-2.

_____

[2]  Many of Fernandez's filings violate Local Rule 7.4, which permits a party to file one opposition to each motion and requires any opposition to be filed not less than twenty-one days before the hearing on that motion.  Fernandez has filed seven documents in connection with the three motions in issue. Although Rule 7.4 permits the court to strike those documents, the court considers all of Fernandez's filings, given his pro se status.

Gervacio says he was working as a security guard at the security check point at the building's main entrance. Id. ¶ 3. At the check point, Fernandez allegedly told Gervacio that, if Gervacio touched him, Fernandez would sue him. Id. Gervacio maintains that he did not touch Fernandez. Id. ¶¶ 5-8.

At some point during Gervacio's encounter with Fernandez, McIntire, a uniformed patrol deputy on duty at the Hawaii Supreme Court Building, received a call about a disturbance at the entrance of the building. Decl. of Paul McIntire ¶ 3, ECF No. 65-2. McIntire says that Fernandez told him he wanted to go to the law library in the building. Id. Fernandez also allegedly said that he could not be screened by security because of his defibrillator. Id. McIntire says that he told Fernandez he could either go through the metal detector, be screened with a metal-detecting wand, or be patted down. Id. According to McIntire, Fernandez refused all three options, so McIntire gave Fernandez the fourth option of turning his belt around, turning his pockets inside out, and taking off his shoes. Id. McIntire says that, at that point, Fernandez became "belligerent and irate." Id. ¶ 4. He allegedly threatened to sue anyone who touched him and began "ranting and raving" about being discriminated against and harassed. Id. McIntire recalls that Fernandez eventually left the Hawaii Supreme Court without entering the building. Id. McIntire also maintains that he did

not touch Fernandez.  <u>Id.</u> ¶ 6.

A sign at the front of the Hawaii Supreme Court building states, "All individuals entering this secured area are required to pass through security screening.  Any individual refusing to comply will be denied entry."  McIntire Decl. ¶ 8; <u>Id.</u> Ex. A.

C.  <u>Fernandez's Facts as Stated at the Hearing.</u>

Given the different accounts and the unclear nature of Fernandez's filings, the court questioned Fernandez at length at the hearing on the present motions about what had happened to him at the Hawaii Supreme Court.  Although Fernandez's answers to the court's questions were sometimes contradictory, they provided more clarity than his papers.  His statements at the hearing were not in admissible format, but the court, bending over backwards given Fernandez's pro se status and keeping <u>Fraser</u> in mind, considers those statements here.

At the hearing, Fernandez said that he had been a frequent visitor to the Hawaii Supreme Court library for years. He said that, on August 25, 2010, in what Fernandez suggested was a departure from earlier practice, he was patted down, from the waist down, by security personnel.  Fernandez said that he told the security officers that he was permitting them to do the pat down on that day only.  Fernandez denied that he was offered other options, such as having a metal-detecting wand passed over

him, or turning his belt around and taking off his shoes.
According to Fernandez, after that day the security officers
patted him down every time he went to the Hawaii Supreme Court.
Fernandez said that he had more than thirty pat downs there, then
stopped going to that library.

Fernandez did not like the way the pat downs felt, but
they were apparently not painful.  He contended that the Hawaii
Supreme Court's security personnel did not have a metal-detecting
wand; he may have been complaining that they should have had a
wand designed to be used to search people with implanted
defibrillators.  Fernandez says that his doctor told him at a
later point that his defibrillator had moved out of its proper
position.  Fernandez claimed that he could not imagine how that
could have happened other than while he was being patted down,
although Fernandez did not indicate that he had ever been patted
down above his waist.

IV.      ANALYSIS.

The allegations in Fernandez's Amended Complaint and
his statements at the hearing on this motion suggest that he is
bringing two claims.  First, he is complaining that he was
discriminated against when he tried to enter the Hawaii Supreme
Court building on and after August 25, 2010.  Second, he is
claiming that the Hawaii Supreme Court building violates the ADA
by being inaccessible to people with disabilities.  The Amended

10

Complaint itself asserts two claims, one titled "Claims under the American with Disabilities Act of 1990," and the other titled "Claims Under Repealed Accessibility Law."  The court begins by analyzing the claims that do not involve disputed facts.

A.  Fernandez Lacks Standing to Assert That the Hawaii Supreme Court Building is Not in Compliance With the ADA.

With respect to Fernandez's allegations in the Amended Complaint that the Hawaii Supreme Court premises violate the ADA, Fernandez fails to establish that he has standing to bring such claims.  A federal court does not have subject-matter jurisdiction over a suit by a plaintiff who lacks standing.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).

As the party invoking federal jurisdiction, Fernandez bears the burden of establishing his standing to sue.  To do so, he must demonstrate that (1) he suffers an actual or threatened injury; (2) the injury is fairly traceable to the challenged action; and (3) the injury is likely to be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Fernandez does not allege that he was actually injured by any of the alleged deficiencies that he identifies, such as the lack of an accessible parking stall or curb ramps with abrupt changes in height.  He was apparently able to enter the Hawaii Supreme Court building for many years and does not provide any facts suggesting any difficulty caused to him

personally.  Even assuming the premises should be changed to comply with applicable law, Fernandez does not allege that the corrections he says are appropriate are necessary to accommodate his own disability.  For example, if Fernandez does not himself visit the building in a van, he has no standing to complain about the alleged lack of a van-accessible parking space.  Similarly, if he does not himself use a ramp for access, he has no standing to complain that the ramp is too steep.  Nor does Fernandez indicate that he plans or desires to visit the Hawaii Supreme Court in the near future, but is deterred or prevented from doing so by the alleged deficiencies.

Fernandez's dispute, as he explained at the hearing, ultimately relates to security procedures, not to problems with the building itself.  As Fernandez does not establish that he has suffered or will suffer any actual injury traceable to the deficiencies he identifies in the Amended Complaint, he does not establish standing.  Summary judgment is therefore warranted as to all Defendants with respect to any claim based on alleged deficiencies in the manner in which the Hawaii Supreme Court building or premises accommodate people with disabilities.

B.    Fernandez Does Not Have a Viable Claim Under Title III of the ADA.

The first claim in the Amended Complaint cites 42 U.S.C. § 12182(a) and 42 U.S.C. § 12183.  Sections 12182 and 12183 fall under Title III of the ADA.  See, e.g., Lonberg v.

<u>Sanborn Theaters, Inc.</u>, 259 F.3d 1029, 1032 (9th Cir. 2001)

(stating that Title III includes 42 U.S.C. § 12181 <u>et seq</u>).

Section 12182(a) states:

> No individual shall be discriminated against
> on the basis of disability in the full and
> equal enjoyment of the goods, services,
> facilities, privileges, advantages, or
> accommodations of any place of public
> accommodation by any person who owns, leases
> (or leases to), or operates a place of public
> accommodation.

Section 12183 relates to construction and alterations in public

accommodations and commercial facilities.

Although Title III relates to public accommodations

and services, those must be "*operated by private entities*" to

fall under Title III. <u>Enyart v. National Conference of Bar</u>

<u>Examiners, Inc.</u>, 630 F.3d 1153, 1160 (9th Cir. 2011) (emphasis

added). "To prevail on a discrimination claim under Title III, a

plaintiff must show that: (1) he is disabled within the meaning

of the ADA; (2) the defendant is a private entity that owns,

leases, or operates a place of public accommodation; and (3) the

plaintiff was denied public accommodations by the defendant

because of his disability." <u>Arizona ex. rel. Goddard v. Harkins</u>

<u>Amusement Enterprises, Inc.</u>, 630 F.3d 666, 670 (9th Cir. 2010)

(citations omitted). In addition, under § 12183, only an "owner,

lessee, lessor, or operator of a noncompliant public

accommodation can be liable . . . for the 'design and construct'

discrimination described in [that section]." <u>Lonberg</u>, 259 F.3d

13

at 1036 (quoting 42 U.S.C. § 12183(a)).

Fernandez's claim is based on alleged misconduct by a security guard at the Hawaii Supreme Court building. He presents no evidence showing that the guard or any other named Defendant is a private entity that owns, leases, or operates a place of public accommodation. Fernandez therefore asserts no viable claim under Title III of the ADA.

C. Fernandez Cannot Bring Claims Under Any "Repealed Accessibility Law."

Summary judgment is granted in favor of all Defendants with respect to the second claim asserted in the Amended Complaint because it does not assert a cognizable claim. Fernandez asserts "claims under repealed accessibility law." Fernandez cannot bring claims pursuant to laws that have been repealed.

D. Fernandez Does Not Assert Triable Claims Under Title II of the ADA.

The court turns now to the heart of this case, which appears to be alleged violations of Title II of the ADA, 42 U.S.C. § 12131 et seq. It is Title II, which is not mentioned in the Amended Complaint, that relates to state and local governments. See, e.g., Enyart, 630 F.3d at 1160. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination

14

by any such entity."

To succeed on a Title II claim, Fernandez must show that "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007) (citations and quotation marks omitted).

Section 12132 is "intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." Crowder v. Kitagawa, 81 F.3d 1480, 1483 (9th Cir. 1996). According to the Ninth Circuit, in § 12101(a)(5), a congressional finding, "Congress declared its intent to address 'outright intentional exclusion' as well as 'the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices.'" Id. (quoting 42 U.S.C. § 12101(a)(5)). Title II therefore covers "at least some so-called disparate impact cases of discrimination,

for the barriers to full participation listed above are almost all facially neutral but may work to effectuate discrimination against disabled persons." Id.

Crowder provides a good overview of the law as it applies to this case. Crowder examined whether a facially neutral policy, Hawaii's requirement that all carnivorous animals be quarantined for 120 days upon entering the state, violated the ADA. The quarantine requirement, designed to prevent the bringing of rabies-infected animals to Hawaii, was challenged by visually impaired plaintiffs, who contended that the quarantining of their guide dogs denied them "meaningful access" to state-provided services. Id. at 1484-85. The Ninth Circuit agreed that, while their guide dogs were quarantined, the plaintiffs could not use a variety of public services, such as public transportation and public parks. Id. at 1484. The ADA therefore required Hawaii to make "reasonable modifications" to its quarantine policy to accommodate the plaintiffs, unless the modifications would "fundamentally alter the nature of the service, program, or activity." Id. (quoting 28 C.F.R. § 35.130(b)(7)).

The Ninth Circuit held that there was a genuine issue of material fact as to whether the plaintiffs' proposed modifications to Hawaii's policy amounted to a "reasonable modification" or a fundamental alteration. Id. at 1485. The

plaintiffs had sought an exemption from the quarantine policy and contended that Hawaii could instead implement more effective alternatives to prevent guide dogs from importing rabies into the state, such as using a vaccine or testing the dogs before admission into Hawaii. Id. at 1482. Reversing the district court's grant of summary judgment, the Ninth Circuit remanded the case.

Fernandez is asserting that he was denied meaningful access to the Hawaii Supreme Court building by the security procedures there. It is not clear whether Fernandez is asserting his Title II claim against all Defendants, but in case he is, the court discusses all Defendants.

### 1. Securitas and Sappal.

Securitas and Sappal seek summary judgment on the ground that they had nothing to do with the events Fernandez complains about. Securitas is a company that its Area Vice President, Sappal, says does not now provide and has never provided private guard services at the Hawaii Supreme Court. Decl. of Sanj Sappal ¶ 2, ECF No. 69-1. Fernandez provides no evidence to the contrary. Fernandez says only that he included Securitas and Sappal as Defendants because, on October 25, 2010, when Fernandez served Gervacio with the Complaint, Gervacio allegedly told him that he was employed by Securitas. Aff. of Ambrose S. Fernandez, Jr. ¶¶ 2-3, ECF No. 77-1. Gervacio's

statement is not evidence that he actually worked for Securitas
on August 25, 2010, or on any other date on which Fernandez was
allegedly patted down.  Nor is there evidence that any other
Securitas employee was involved with patting down Fernandez at
the Hawaii Supreme Court.  In fact, there is no evidence that
Gervacio's alleged statement that he worked for Securitas was
even true in October 2010.  Even accepting as true Fernandez's
allegation that Gervacio said he worked for Securitas, if what
Gervacio said was not true, Securitas and Sappal do not belong in
this case.  Given the absence of evidence that Securitas or
Sappal had anything to do with what Fernandez complains about,
Securitas and Sappal are entitled to summary judgment.

2. <u>Frank, McIntire, and Gervacio.</u>

With respect to Frank and McIntire, Fernandez does not
make clear whether he is suing them in their individual
capacities or in their official capacities.[3]  With respect to
Gervacio, it is unclear whether Fernandez is suing him as an
agent of the State, or as a private individual.  Gervacio was
assigned to serve as a security guard at the Hawaii Supreme Court
building on August, 25, 2010.  Saturino Gervacio Decl. ¶ 2, ECF

---

[3]  The Amended Complaint lists Frank and McIntire in the
caption, but the body of the pleading does not describe actions
by Frank at all.  The body of the pleading refers to Bruce Coppa,
who is not listed in the case caption, but does not indicate what
Coppa is being sued for having done.  Bruce Coppa has not
appeared in this action (presumably because he was not served),
and the court does not treat him as a party.

No. 85-2.  It appears that he was employed by a private security company that had a contract with the State, even though that fact was not explicitly stated by Gervacio in his papers.  The parties do not raise as an issue whether Title II permits suits against privately employed individuals who appear to be acting as State agents.  The court assumes without determining that, for purposes of the pending motions, Fernandez may sue Gervacio under Title II in his alleged capacity as a State agent.  To the extent Fernandez brings his Title II claims against Gervaio as a State agent, it is also unclear whether those claims are brought against him in his individual or official capacity.  Fernandez appears to seek both money damages and injunctive relief from all Defendants.

> a.  State Defendants Sued in Their
>      Individual Capacities.

Relevant case law suggests that Fernandez cannot bring Title II claims against Frank, McIntire, and Gervacio in their individual capacities.  Although the Ninth Circuit has declined to reach this issue, see Eason v. Clark Cnty. Sch. Dist., 303 F.3d 1137, 1145 (9th Cir. 2002),[4] the Seventh Circuit, Eighth Circuit, and some district courts in the Ninth Circuit have determined that public actors cannot be sued in their individual

---

[4]  There are some unpublished Ninth Circuit decisions that address the issue but, as those were issued before Ninth Circuit rules permitted citation to unpublished Ninth Circuit rulings, the court does not rely on them here.

capacities directly under Title II of the ADA.  <u>See, e.g.</u>, <u>Walker</u>
<u>v. Snyder</u>, 213 F.3d 344, 346 (7th Cir. 2000), <u>overruled on other</u>
<u>grounds by</u> <u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356
(2001); <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th
Cir. 1999) (en banc); <u>Hunter v. Clark</u>, 2010 WL 2196684, at *2
(E.D. Cal. May 28, 2010); <u>Gonzales v. Dexter</u>, 2008 WL 4275783, *6
(C.D. Cal. Sept. 4, 2008).  In <u>Thomas v. Nakatani</u>, 128 F. Supp.
2d 684, 692 (D. Haw. 2000), another judge in this district
reached the same conclusion, based in part on the Eighth and
Seventh Circuit's decisions in <u>Walker</u> and <u>Alsbrook</u>.

      This court, however, need not make a determination as
to that issue here.  Even assuming that Fernandez may sue Frank,
McIntire, and Gervacio in their individual capacities, they are
entitled to summary judgment because they have qualified immunity
with respect to claims for money damages, and Fernandez does not
appear to seek injunctive relief from them in their individual
capacities.

      "[G]overnment officials performing discretionary
functions [are entitled to] a qualified immunity, shielding them
from civil damages liability as long as their actions could
reasonably have been thought consistent with the rights they are
alleged to have violated."  <u>Anderson v. Creighton</u>, 483 U.S. 635,
638 (1987) (citations omitted).  "The qualified immunity defense
shields government agents from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kwai Fun Wong v. United States, 373 F.3d 982, 951 (9th Cir. 2004) (internal quotation marks, modifications, and citations omitted).

The Supreme Court has set forth a two-pronged analysis for resolving government officials' assertions of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

On the first prong, the court inquires "whether, taken in the light most favorable to the party asserting the injury, that party has established a violation of a federal right." Preschooler II v. Clark Cnty. Sch. Bd. of Trustees, 479 F.3d 1175, 1179 (9th Cir. 2007) (citing Saucier, 533 U.S. at 201).

The second prong requires the court to determine whether such right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201; Scott v. Harris, 550 U.S. 372, 377 (2007). A plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation. If the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. See Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002); Trevino

v. Gates, 99 F.3d 911, 916-17 (9th Cir. 1996).

Whether an act is a violation of a federal right and whether the right was clearly established at the time of the violation are pure legal questions for the court. See Martinez, 323 F.3d at 1183.

With respect to the first prong, even assuming Fernandez's factual allegations are true, he does not state a violation by Frank, McIntire, or Gervacio of any federal right. For one thing, Fernandez does not cite, and the court has not found, any federal law prohibiting a pat down security search at a public facility. Nor has Fernandez cited any federal law requiring the use of a wand by personnel at a public facility. With respect to Frank and McIntire, Fernandez does not even allege that they actually searched Fernandez or ordered anyone else to search Fernandez. While Fernandez denies that he was offered the options McIntire says he offered, the court is unaware of any federal law providing that a reasonable pat down constitutes a failure to accommodate a disability.

With respect to the second qualified immunity prong, nothing in the record suggests that it was clearly established that the ADA or any other law required the Hawaii Supreme Court building to have the metal-detecting wand that Fernandez complains it lacked, or that a pat down, performed as part of a routine security screening, constituted a denial of meaningful

22

access to a public facility. Fernandez, who bears the burden of

showing that federal law is clearly established as to the matter

in issue, see Sorrels, 290 F.3d at 969, makes no argument on this

point. Indeed, at the hearing before this court, Fernandez

conceded that he was unaware of any law requiring the use of the

wand he says should have been used.

To the extent Fernandez seeks prospective injunctive

relief against Frank, McIntire, and Gervacio in their individual

capacities, those claims would not be precluded by their

qualified immunity. See Hydrick v. Hunter, 2012 WL 89157, at *1

(9th Cir. Jan. 12, 2012) (citing Center for Bio-Ethical Reform,

Inc. v. Los Angeles Cnty. Sheriff Dept., 533 F.3d 780, 794-95

(9th Cir. 2008), and Los Angeles Police Protective League v.

Gates, 995 F.2d 1469, 1472 (9th Cir. 1993)). However, as

Fernandez appears to be asking Defendants to change current

security procedures at the Hawaii Supreme Court, his injunctive

relief claims are more properly directed at those Defendants in

their official capacities.

> b. State Defendants Sued in Their Official
>    Capacities.

Title II does allow a plaintiff to sue state

defendants in their official capacities. Such claims are not

barred by qualified immunity. See, e.g., Community House, Inc.

v. Boise, Idaho, 623 F.3d 945, 965 (9th Cir. 2010) ("Qualified

immunity . . . is a defense available only to government

officials sued in their individual capacities.  It is not
available to those sued only in their official capacities."
(citing Eng v. Cooley, 552 F.3d 1062, 1064 n. 1 (9th Cir. 2009),
and Kentucky v. Graham, 473 U.S. 159, 165-68 (1985)).  Nor are
they barred by the Eleventh Amendment, as states do not have
Eleventh Amendment immunity with respect to claims brought under
Title II of the ADA.  See Phiffer v. Columbia River Corr. Inst.,
343 F.3d 791, 793 (9th Cir. 2004) (citations omitted); see also
Tennessee v. Lane, 541 U.S. 509, 533-534 (2004) ("Title II, as it
applies to the class of cases implicating the fundamental right
of access to the courts, constitutes a valid exercise of
Congress' § 5 authority to enforce the guarantees of the
Fourteenth Amendment.").

        The remaining claims are therefore Fernandez's Title
II claims against Frank, McIntire, and Gervacio in their official
capacities for both injunctive and monetary relief and against
Gervacio to the extent Fernandez is suing him as a private actor.

        Fernandez is not entitled to injunctive relief from
Frank, McIntire, and Gervacio because there is no evidence that
they are presently taking any action relevant to Fernandez.  Not
only does Fernandez fail to identify any such activity, he
indicated at the hearing before this court that he no longer goes
to the Hawaii Supreme Court.  He stated no intent or desire to
resume visiting that building.  More importantly, it is only

wrongful activity that would be enjoined, and, as discussed later in this order, Fernandez does not establish that a pat down is illegal.

The court turns now to any claim Fernandez may be bringing under Title II for money damages against Frank, McIntire, and Gervacio. The court first questions whether, to the extent Fernandez is suing Gervacio as a private actor, such a claim is cognizable under Title II. Title II expressly prohibits discrimination by a "public entity." 42 U.S.C. § 12132. However, regardless of whether Fernandez is suing Gervacio as a State actor or a private actor, there is no triable issue as to whether Gervacio, or any other Defendant, discriminated against Fernandez in violation of Title II.

Gervacio's moving papers do not indicate whether Fernandez entered the Hawaii Supreme Court on August 25, 2010. Frank and McIntire's moving papers say that Fernandez left without entering the building. Fernandez's papers make no statement as to whether he did or did not enter that day, but at the hearing he said that he allowed himself to be patted down and entered the building that day. If the court accepts as true Fernandez's oral statement, then he was not "excluded from participation in or denied the benefits of" any service provided by the Hawaii Supreme Court on August 25, 2010. See O'Guinn, 502 F.3d at 1060. Even if the court does not consider Fernandez's oral statement and assumes that he left the building without

entering on August 25, 2010, and that he thereafter would have returned but for security personnel's insistence on patting him down given the alleged lack of an appropriate wand, Fernandez's Title II claim fails.

With respect to being patted down, Fernandez appears to allege that he was constructively denied access to the Hawaii Supreme Court building by being compelled to allow a pat down when he declined to walk through the magnetometer. Fernandez asserts that the pat down is a form of discrimination against him based on his disability. Fernandez is not disputing that he may be screened for security purposes. His complaint is with the manner of the screening. He nowhere contends that the pat down was painful or humiliating. At most, he says he does not like being patted down. When questioned specifically about the incident on August 25, 2010, Fernandez could not identify what he did not like about the pat down. He said that, after being patted down on numerous occasions, he felt that "enough is enough." Fernandez said that the security guards already knew him from his frequent visits to the Hawaii Supreme Court and did not need to continue to search him every time he attempted to enter the building.

Defendants, however, have established that every individual who enters the Hawaii Supreme Court building must be screened by security. There is no indication that any pat down

requested or conducted by Gervacio or anyone else was anything other than a routine security procedure. Fernandez provides no authority for the proposition that a pat down is an impermissible way to screen someone who does not walk through the magnetometer.

Although Fernandez says his defibrillator must have moved out of position because of the pat downs, he provides no evidence supporting this allegation. At the hearing, Fernandez stated that, sometime after August 25, 2010, his doctor told him that his defibrillator had moved. It is Fernandez's belief that the many pat downs caused it to move, as he says he is very careful, does not bump into anything, and knows of no other reason the defibrillator would have moved.

Fernandez does not say his doctor has concluded that the pat downs moved the defibrillator. Nor does Fernandez claim that he felt the defibrillator move when he was being patted down, as Fernandez was apparently not aware that it had moved until his doctor later told him. No one purporting to know how a defibrillator could move out of position has said that the movement of Fernandez's defibrillator could have resulted from one or more pat downs, and the court has before it no example of anyone whose defibrillator was found to have moved because of a pat down. At the hearing, Fernandez said that Gervacio was not rough with him, and that the pat down was from the waist down only. Fernandez does not explain how a pat down of that nature

could have moved a medical device implanted in his chest.  In short, Fernandez does not show that any Defendant violated any law in connection with any pat down.

The court turns next to Fernandez's complaint that he should have been screened with a wand.  Fernandez conceded at the hearing that he could not cite any law requiring the use of a wand.  Fernandez does not explain why a wand would have been safer for him than the magnetometer.  If a wand passed over Fernandez's chest could have damaged the defibrillator, then Fernandez can hardly complain about the lack of a wand. Fernandez may be contending that there is a special wand that can be safely used with a defibrillator.  Even assuming such a wand exists, Fernandez provides no evidence as to availability or cost that allows this court to evaluate whether it is reasonable to require that it have been used.

In sum, Frank, McIntire, and Gervacio are entitled to summary judgment with respect to Fernandez's Title II claims.

E.    Retaliation.

Fernandez may also be attempting to assert a retaliation claim.  Although he does not clearly articulate such a claim, Fernandez refers to "retaliation" in the Amended Complaint, see Amended Compl. ¶¶ 55, 63, and states that McIntire retaliated against him.  Id. ¶ 45.  Fernandez may be alleging that he was subjected to pat downs because he complained about

28

various ADA violations.

Under 42 U.S.C. § 12203(a), "No person shall
discriminate against any individual because such individual has
opposed any act or practice made unlawful by this chapter or
because such individual made a charge, testified, assisted, or
participated in any a manner in an investigation, proceeding, or
hearing under this chapter."

There is an absence of evidence showing that Fernandez
was retaliated against in violation of § 12203(a).  Even if
Fernandez's earlier complaints correctly identified ADA
violations, no law is provided to court indicating that it was
discriminatory retaliation to conduct a pat down that was
required for security purposes, was not conducted in an
unreasonable manner, and was not required of others only because
others were screened by the magnetometer that Fernandez says he
could not safely walk though.  Even if Defendants were annoyed by
legitimate ADA complaints Fernandez says he made, and even if
Defendants subjectively delighted in patting Fernandez down (a
matter not established by the record) or in otherwise making
Fernandez uncomfortable, the reasonably performed security
screening described in the record was not an actionable
retaliatory act or ADA violation.

V.          CONCLUSION.

The summary judgment motions brought by Defendants are

granted.  The Clerk of Court is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 23, 2012.



_/s/ Susan Oki Mollway_____
Susan Oki Mollway
Chief United States District Judge

Fernandez v. Frank, et al., Civ. No. 10-00573 SOM/BMK; ORDER GRANTING (1) DEFENDANTS SANJ SAPPAL AND SECURITAS'S MOTION FOR SUMMARY JUDGMENT, (2) DEFENDANTS CLAYTON FRANK AND PAUL McINTIRE'S MOTION FOR SUMMARY JUDGMENT, AND (3) DEFENDANT SATURINO GERVACIO'S MOTION FOR SUMMARY JUDGMENT